Filed 5/16/23  P. v. Sanchez CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>BRYAN SANCHEZ,<br><br>　　　Defendant and Appellant. | B318937<br><br>(Los Angeles County Super. Ct. No. BA272661-02) |

　　　APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Michael E. Pastor, Judge.  Affirmed.

　　　Kathy R. Moreno, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Charles S. Lee, Supervising Deputy Attorney General, David E. Madeo, Deputy Attorney General, for Plaintiff and Respondent.

Bryan Sanchez and three codefendants were found guilty of the murder of Juan Monsivais and the attempted willful, deliberate and premeditated murder of Manuel De La Rosa in a gang-related drive-by shooting on September 6, 2003. Sanchez was sentenced to an aggregate indeterminate state prison term of 35 years to life for the murder and attempted murder with the associated criminal street gang enhancements. We affirmed those convictions. (*People v. Flores* (July 19, 2010, B211207) [nonpub. opn.].)

Following an evidentiary hearing on March 3, 2022, the superior court denied Sanchez's postjudgment petition for resentencing pursuant to Penal Code section 1172.6 (former section 1170.95),[1] ruling Sanchez was "structurally ineligible for relief." The court found beyond a reasonable doubt that, although not the shooter, Sanchez had acted with express malice when aiding and abetting the crimes or, in the alternative, acted with implied malice based on his "mental state of knowing the dangerousness of his conduct." The court additionally found as to attempted murder the evidence established Sanchez's intent to kill (express malice) beyond a reasonable doubt.

On appeal Sanchez does not challenge the sufficiency of the evidence to support the superior court's express malice findings. He argues only that the court erred by refusing to consider evidence of youth-related mitigating factors in assessing whether he—17 years old at the time of the crimes—was guilty of implied malice murder. Sanchez also contends the court deprived him of his right to be present and to present a full defense when it ordered the court reporter to stop recording Sanchez's comments

---

[1] Statutory references are to this code.

2

following the court's ruling.  Although we agree with Sanchez that youth-related mitigating factors must be considered when evaluating whether a defendant acted with conscious disregard for human life to establish implied malice murder, the court's error in refusing to do so in this case was harmless, as was any possible error in not allowing Sanchez to continue to argue the merits after the court had denied his petition.  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *Sanchez's Convictions for Murder and Attempted Murder*

The principal witnesses concerning the September 6, 2003 drive-by shooting at the joint trial of Sanchez, his girlfriend Jazmin Rossier, Rafael Fuentes, Edgar Flores and Pedro Aguilar were Norberto Pacheco and brothers Santos and David Kuk.  The evidence established that Sanchez, Rossier and Fuentes were members of the Red Shield clique of the 18th Street gang, the largest Hispanic criminal street gang in the United States.[2] Flores was a member of the Grandview clique of the 18th Street gang.  The two cliques were known to cooperate in joint gang activities.  (Pacheco was a member of the Red Shield clique;

---

[2]  At the hearing to determine whether Sanchez was eligible for resentencing, the superior court admitted into evidence, without objection from Sanchez, the People's evidentiary hearing brief prepared for the section 1172.6, subdivision (d)(3), hearing for Sanchez's codefendant Jazmin Rossier.  That brief included significant excerpts from the factual summary in our opinion affirming Sanchez's and Rossier's convictions for second degree murder and attempted willful, deliberate and premediated murder (*People v. Flores*, *supra*, B211207), annotated with citations to the trial transcript.  Our summary of the underlying facts is based on that evidentiary presentation.

3

Santos and David Kuk were members of the Grandview clique.) The 18th Street gang's rivals included the Temple Street gang.

On Saturday, September 6, 2003, while members of the Red Shield and Grandview cliques were drinking beer and socializing together, someone (Sanchez, according to Pacheco) suggested they go on a mission to exact revenge against the Temple Street gang, apparently because one of its members had assaulted Santos Kuk.

Sanchez drove a stolen minivan. Rossier, Flores, Fuentes and Eric Vasquez, another 18th Street gang member, as well as the Kuk brothers, were inside the minivan. The group traveled to a commercial location where Pacheco provided them with two guns and then left the group. Flores took the shotgun, and Fuentes the rifle.

At one point the group saw a rival gang member who had been identified as a target, but Sanchez said not to shoot because there was a woman with a baby nearby. Sanchez continued to drive around the neighborhood for several hours looking for "enemies" to shoot. As the minivan drove past the Kuk brothers' home, which was in Temple Street gang territory, several Temple Street gang members were seen drinking across the street. After some discussion inside the minivan, Fuentes pulled out the rifle, shouted a derogatory comment and fired repeatedly out the front passenger side window. Flores tried, but was unable, to get the shotgun to fire out the window of the minivan's side door. Sanchez then drove the minivan away. Pacheco testified that Sanchez, Rossier, Flores and Fuentes all spoke to him after the incident and acknowledged their participation in the shooting.

4

Monsivais, who had been drinking outside his home with several of his cousins and a friend (at least one of whom was a Temple Street gang member), was shot and killed by a single gunshot wound to the back. De La Rosa was hit by bullets in the chest and hand and spent several days in the hospital after the shooting.

The trial court's instructions on the counts charging murder and attempted murder included CALCRIM No. 401, describing the elements necessary to prove direct aiding and abetting, and CALCRIM No. 403, explaining the natural and probable consequences doctrine and identifying assault with a firearm as the target offense. The jury found Sanchez guilty of second degree murder; Fuentes, the shooter, was found guilty of first degree murder. Sanchez and Fuentes were both convicted of attempted willful, deliberate and premeditated murder. The jury found true the allegations both offenses had been committed to benefit a criminal street gang, but as to Sanchez found not true various firearm-use allegations. We affirmed those convictions on appeal. (*People v. Flores*, *supra*, B211207.)

2. *Sanchez's Petition for Resentencing*

On May 28, 2019 Sanchez petitioned for resentencing relief under former section 1170.95. The superior court summarily denied the petition without first appointing counsel, ruling Sanchez was ineligible for resentencing because the evidence at trial and our opinion on appeal demonstrated Sanchez had either aided and abetted the actual shooter with the intent to kill or had acted as a major participant in the crimes and with a reckless indifference to human life. The court also ruled Sanchez was not entitled to relief because former section 1170.95 was unconstitutional.

5

We reversed that order and remanded for the superior court to appoint counsel for Sanchez and to consider, after briefing by both sides, whether Sanchez had established a prima facie case for resentencing relief. (*People v. Sanchez* (Aug. 18, 2020, B300319) [nonpub. opn.].)[3]

On remand the court appointed counsel for Sanchez. Sanchez thereafter moved to supplement the record with information concerning youth-related mitigating factors in anticipation of a hearing pursuant to *People v. Franklin* (2016) 63 Cal.4th 261.[4] The People filed a memorandum in response to

---

[3] We held former section 1170.95 was constitutional, as had every other court of appeal that considered the issue. In addition, we held the superior court erred in ruling, even if not a direct aider and abettor, Sanchez could be still be convicted of Monsivais's murder as a major participant in the underlying crimes who had acted with a reckless indifference to human life— the standard for a conviction of felony murder under section 189, subdivision (e)(3)—explaining there had been no felony-murder instruction at Sanchez's trial, nor could there have been because aggravated assault cannot provide the basis for a charge of felony murder.

[4] The Supreme Court in *People v. Franklin*, *supra*, 63 Cal.4th at pages 283-284 held a defendant eligible for a youth offender parole hearing must be permitted at the time of sentencing to make a record of those factors, a proceeding that has since become known as a *Franklin* proceeding. The Court in *In re Cook* (2019) 7 Cal.5th 439, 458 held a juvenile offender with a final judgment could move in a postjudgment proceeding under section 1203.01 (rather than through a petition for a writ of habeas corpus) to present evidence of youth-related factors.

6

Sanchez's petition but did not object to issuance of an order to show cause. The superior court found that Sanchez had made a prima facie case for resentencing relief with respect to both the murder and attempted murder convictions and set a date for an evidentiary hearing. Sanchez filed a reply to the People's memorandum.

   3. *The Evidentiary Hearing and the Court's Ruling Denying Sanchez's Petition*

Sanchez and his counsel both appeared via Webex at a status hearing on March 3, 2022. The court granted Sanchez's motion to represent himself, and Sanchez stated he wanted to proceed immediately to the evidentiary hearing. Without objection from Sanchez, the court admitted into evidence an evidentiary hearing brief filed by the People in Rossier's case, which had been set for a hearing on an order to show cause on that date. Following a recess the court conducted the evidentiary hearing, which began with the court taking judicial notice of the record of conviction in Sanchez's case, Sanchez's petition and other documentation filed by the parties and the Rossier brief.

The prosecutor argued the evidence established beyond a reasonable doubt that Sanchez had acted as an aider and abettor of Fuentes with the intent to kill and, at minimum, with a conscious disregard for human life proving implied malice. Sanchez argued he had been convicted of second degree murder under the natural and probable consequences doctrine, the jury had not convicted him of first degree murder as a direct aider and abettor of Fuentes, and it was improper for the People to now argue he was guilty of second degree implied malice murder—a theory that had not been presented at his trial. He also insisted the fact he was a teenager at the time of the offenses was

7

material in determining whether he had acted with conscious disregard for human life.[5]

At the outset of its ruling the court rejected Sanchez's contention that youth-related mitigating factors were relevant, stating, "You are going way outside of the record in this case by bringing up theories of juvenile incapacity which could have been and were not presented to the appellate court. This is not the time for the court to consider citations without any evidentiary background or requirement."

The court then noted it was the People's burden to prove beyond a reasonable doubt to the court, as fact finder, the requisite mens rea and actus reus to prove murder under current law. Considering the entire record of conviction, the court ruled, "The petitioner absolutely had the mens rea of actual and/or implied malice." After reviewing the evidence before it, the court continued, "Under existing law, there was express malice. The court does not have to make a determination whether it was willful, deliberate, and premediated, but whether there was malice. I found and find that there was and is that mental state. It's overwhelming that Mr. Sanchez had that mental state. The court also certainly can and does conclude that in addition to the theory of express malice second degree murder, there is implied malice second degree murder based upon Mr. Sanchez's mental state of knowing the dangerousness of his conduct, combined with the actions he took. So there are alternative valid current theories of culpability in the case based upon express second

---

[5] At the conclusion of his argument, and before the court's ruling, Sanchez stated, "I submit, Your Honor."

8

degree malice and implied second degree malice." The court denied the motion, finding Sanchez "statutorily ineligible."

The prosecutor asked the court to confirm that its analysis with respect to the existence of express malice applied to the attempted murder count. The court responded, "Unlike count 1, which necessarily doesn't have a requirement of express malice, count 2 does have that requirement under existing law and there is more than sufficient evidence to establish that requirement of express malice beyond a reasonable doubt."

The court then asked Sanchez, "Do you have anything else you wish to address right now, Mr. Sanchez?" Sanchez responded by again asserting that implied malice second degree murder was not a theory presented at trial. Emphasizing that Sanchez had previously made this argument and the court had considered it, the court directed the court reporter to stop recording Sanchez, explaining to him, "The record is more than sufficient to demonstrate your theory and theories and your objections, which you have noted and re-noted. I'm not going to go over things time and time again." Sanchez acknowledged the denial of his motion, stated he would file a notice of appeal and inquired about the status of his *Franklin* proceeding. The court granted Sanchez's request to reappoint his counsel and scheduled a status conference with respect to the *Franklin* proceeding.

Sanchez filed a timely notice of appeal.

## DISCUSSION

1. *Section 1172.6 (Former Section 1170.95)*

Senate Bill No. 1437 (Stats. 2018, ch. 1015) substantially modified the law relating to accomplice liability for murder, eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Gentile*

9

(2020) 10 Cal.5th 830, 842-843) and significantly narrowing the felony-murder exception to the malice requirement for murder. (§§ 188, subd. (a)(3), 189, subd. (e); see *People v. Strong* (2022) 13 Cal.5th 698, 707-708; *People v. Lewis* (2021) 11 Cal.5th 952, 957.)  It also authorized, through former section 1170.95, an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not now be convicted of murder because of Senate Bill No. 1437's changes to the definitions of the crime.  (See *Strong*, at p. 708; *Lewis*, at p. 957; *Gentile*, at p. 843.)  As amended by Senate Bill No. 775 (Stats. 2021, ch. 551, § 2), these ameliorative changes to the law now expressly apply to attempted murder and voluntary manslaughter.

If the petition contains all the required information, including a declaration by the petitioner that he or she is eligible for relief (§ 1172.6, subd. (b)(1)(A)), the court must appoint counsel to represent the petitioner, if requested (§ 1172.6, subd. (b)(3)), and direct the prosecutor to file a response to the petition, permit the petitioner to file a reply and determine if the petitioner has made a prima facie showing that he or she is entitled to relief.  (§ 1172.6, subd. (c); see *People v. Lewis*, *supra*, 11 Cal.5th at pp. 962-963.)

When, as here, a petitioner has carried the burden of making the requisite prima facie showing he or she falls within the provisions of section 1172.6 and is entitled to relief, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts.

(§ 1172.6, subd. (d)(1).)  At that hearing "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019."  (§ 1172.6, subd. (d)(3).)  The court may consider evidence "previously admitted at any prior hearing or trial that is admissible under current law," including witness testimony.  The petitioner and the prosecutor may also offer new or additional evidence.  (*Ibid.*)

The superior court's decision to deny the petition after an evidentiary hearing, if the proper standard and burden of proof was applied, is reviewed for substantial evidence.  (*People v. Vargas* (2022) 84 Cal.App.5th 943, 951; *People v. Ramirez* (2021) 71 Cal.App.5th 970, 985; *People v. Hernandez* (2021) 60 Cal.App.5th 94, 113.)

> 2. *The Superior Court Erred in Refusing To Consider Youth-related Mitigating Factors When Assessing the Mens Rea Necessary for Implied Malice Murder, but Its Error Was Harmless*
>
>> a. *Youth-related mitigating factors are relevant to evaluating conscious disregard for human life*

In *Miller v. Alabama* (2012) 567 U.S. 460 (*Miller*) the United States Supreme Court held it violated the Eighth Amendment's ban on the infliction of cruel and unusual punishment to impose a mandatory life without parole sentence on a juvenile convicted of murder because that mandatory penalty "precludes consideration of [the juvenile's] chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences.  It prevents taking into account the family and home environment that surrounds him—and from which he cannot usually extricate

11

himself—no matter how brutal or dysfunctional. It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him. Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys." (*Id.* at pp. 477-478.)[6] The *Miller* Court identified three significant differences between juveniles and adults that directly bear on culpability—what are now commonly referred to as youth-related mitigating factors:[7] "First, children have a "'lack of maturity and an underdeveloped sense of responsibility,'" leading to recklessness, impulsivity, and heedless risk-taking. [Citation.] Second, children 'are more vulnerable . . . to negative influences and outside pressures,' including from their family and peers; they have limited 'contro[l] over their own environment' and lack the ability to extricate themselves from horrific, crime-producing

---

[6] *Miller*, *supra*, 567 U.S. 460 followed and expanded on *Roper v. Simmons* (2005) 543 U.S. 551, 568-569, in which the Supreme Court held the Eighth Amendment categorically prohibited imposition of the death penalty on juvenile offenders, defined as youths under the age of 18, and *Graham v. Florida* (2010) 560 U.S. 48, 74, in which the Court held it violated the Eighth Amendment to impose a sentence of life without parole on a juvenile offender who had not committed homicide.

[7] See, e.g., *People v. Franklin, supra*, 63 Cal.4th at page 275; *People v. Hardin* (2022) 84 Cal.App.5th 273, 288, review granted January 11, 2023, S277487; *People v. Ochoa* (2020) 53 Cal.App.5th 841, 850.)

settings.  [Citation.]  And third, a child's character is not as 'well formed' as an adult's; his traits are 'less fixed' and his actions less likely to be 'evidence of irretrievabl[e] deprav[ity].'"  (*Id.* at p. 471.)

This court in *People v. Ramirez*, *supra*, 71 Cal.App.5th at page 987, relying on the youth-related principles articulated in *Miller*, *supra*, 567 U.S. 460, reversed the superior court's order denying a petition for resentencing under section 1172.6, holding, "'[A] defendant's youth is a relevant factor in determining whether the defendant acted with reckless indifference to human life.'"  Similarly, the court of appeal in *In re Moore* (2021) 68 Cal.App.5th 434, 453-454 applied the *Miller* factors and found the evidence in the record was insufficient to establish the subjective element of reckless indifference: "'Children "generally are less mature and responsible than adults"' and '"often lack the experience, perspective, and judgment to recognize and avoid choices that could be detrimental to them.""'  (See *People v. Harris* (2021) 60 Cal.App.5th 939, 960, review granted Apr. 28, 2021, S267802, review dismissed Sept. 28, 2022 [reversing summary denial of section 1172.6 petition and remanding for evidentiary hearing, observing that "given [petitioner's] youth at the time of the crime, particularly in light of subsequent case law's recognition of the science relating to adolescent brain development [citations], it is far from clear that [petitioner] was actually aware 'of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants'"].)

In challenging the prosecutor's theory of implied malice murder, Sanchez urged the court to consider his age and the concomitant youth-related mitigating factors, insisting the

evidence was insufficient to prove he had the requisite mental state:  "Mr. Sanchez [was] a child in the eyes of the law.  Age is a relevant factor in determining whether he acted with conscious disregard for human life."  The superior court's refusal to do so when finding Sanchez had acted with implied malice—that is, that he harbored a conscious disregard for human life during the September 6, 2003 incident—was badly misguided.  As discussed, the court reasoned Sanchez could have presented the issue "to the appellate court," but failed to do so.  Yet the direct appeal from Sanchez's conviction (*People v. Flores*, *supra*, B211207) was decided by this court in July 2010, nearly two years before the decision in *Miller*, *supra*, 567 U.S. 460.  Moreover, as Sanchez explained to the court at the evidentiary hearing in March 2022, the People had not advanced an implied malice theory at the 2008 trial.  In addition, the appeal from the earlier summary denial of his petition for resentencing under section 1172.6 (*People v. Sanchez*, *supra*, B300319) considered only procedural issues—the failure to appoint counsel and improper fact finding at the prima facie stage.[8]  There was neither an opportunity nor a reason prior to the March 3, 2022 hearing for Sanchez to advance the argument that his youth should be considered in determining whether he was guilty of implied malice murder.

The People's argument it was not error for the superior court to refuse to consider youth-related factors is hardly any better.  Acknowledging the decisions in *In re Moore*, *supra*,

---

[8]     Our decision denying Sanchez's petition for habeas corpus relief considered only the claim his defense counsel had provided ineffective assistance during the trial by entering an ill-advised stipulation after failing to adequately preserve an alibi defense. (*In re Sanchez* (July 23, 2012, B218637) [nonpub. opn.].)

14

68 Cal.App.5th 434 and *People v. Harris*, *supra*, 60 Cal.App.5th 939, the Attorney General notes those cases concerned reckless indifference to human life, the mens rea requirement for felony murder, while implied malice requires a conscious disregard for human life.  With that and no more, the Attorney General asserts that Sanchez's youth was, therefore, not a relevant factor in determining whether he acted with implied malice.

The Attorney General's ipse dixit cannot withstand even minimal scrutiny.  The Supreme Court in *People v. Lasko* (2000) 23 Cal.4th 101, 107, explained that the statutory definition of implied malice "'has never proved of much assistance in defining the concept in concrete terms' [citation], and that juries instead should be instructed that malice is implied 'when the killing results from an intentional act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life.'"  "Implied malice contemplates a subjective awareness of a higher degree of risk than does gross negligence, and involves an element of wantonness which is absent in gross negligence." (*People v. Watson* (1981) 30 Cal.3d 290, 296; accord, *People v. Butler* (2010) 187 Cal.App.4th 998, 1008 ["[i]mplied malice murder requires a defendant's conscious disregard for life, meaning that the defendant subjectively appreciated the risk involved"].)

"[R]eckless indifference to human life" for purposes of the felony-murder rule in section 189, subdivision (e)(3), and a special-circumstance finding under section 190.2, subdivision (a)(17), is not too different.  The Supreme Court in *People v. Clark* (2016) 63 Cal.4th 522, 617, held reckless indifference had both a subjective and objective element.  "The

15

subjective element is the defendant's conscious disregard of risks known to him or her."  (*Ibid*.; see *People v. Banks* (2015) 61 Cal.4th 788, 801 ["With respect to the mental aspect of culpability, [courts] look to whether a defendant has '"knowingly engag[ed] in criminal activities known to carry a grave risk of death."'  [Citation.]  The defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed, demonstrating reckless indifference to the significant risk of death his or her actions create"]; see also *In re Scoggins* (2020) 9 Cal.5th 667, 677 ["'only knowingly creating a "grave risk of death"' satisfies the statutory requirement"].)

In sum, "reckless indifference to" and "conscious disregard for" human life both require proof the defendant had a subjective awareness of the significant risk of death in the activities being pursued.  (Compare CALCRIM No. 520 ["The defendant had *implied malice* if:  [¶] . . . [¶]  3.  At the time (he/she) (acted/[or] failed to act), (he/she) knew (his/her) (act/[or] failure to act) was dangerous to human life; [¶] AND [¶]  4.  (He/She) deliberately (acted/[or] failed to act) with conscious disregard for (human/ [or] fetal) life"] with CALCRIM No. 703 ["[a] person *acts with reckless indifference to human life* when he or she knowingly engages in criminal activity that he or she knows involves a grave risk of death"].)  A youth's lack of maturity, impulsivity and vulnerability to peer pressure—youth-related mitigating factors—are no less relevant to determining one mental state than the other.  It was error for the superior court to refuse to consider those factors when finding Sanchez was guilty of implied malice murder.

b. *The court's error in refusing to consider youth-related mitigating factors was harmless in light of its finding of express malice*

Although we are troubled by the superior court's failure to recognize its obligation to consider youth-related factors when evaluating whether the evidence proved 17-year-old Sanchez acted with a conscious disregard for human life (and by the Attorney General's perfunctory effort to justify the court's decision), the implied malice murder finding was an alternative ruling.  The superior court also found beyond a reasonable doubt that Sanchez had acted with express malice—an intent to kill—when he aided and abetted Fuentes's actions in shooting Monsivais and De La Rosa.  Sanchez does not challenge the sufficiency of the evidence to support that finding, which established he was not entitled to resentencing relief.  Accordingly, the court's error in finding Sanchez guilty of implied malice murder was harmless.

3. *The Superior Court's Direction To the Court Reporter Not To Record Sanchez's Post-ruling Argument Was Not Prejudicial Error*

Section 1044 provides, "It shall be the duty of the judge to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters, with a view to the expeditious and effective ascertainment of the truth regarding the matters involved."  (See *People v. Strum* (2006) 37 Cal.4th 1218, 1237 ["[t]he trial court has a statutory duty to control trial proceedings"]; *People v. Marshall* (1996) 13 Cal.4th 799, 854-855 ["the trial court retains discretion to impose reasonable time limits and to ensure that argument does not stray unduly from the mark"].)

17

Here, the prosecutor, who had the burden of proof, made an initial argument after the superior court briefly described what evidence was before it and the matters as to which it was taking judicial notice.  Sanchez then presented his argument, including that the theory of second degree implied malice murder had not been argued by the People at trial and should not be a basis for finding him ineligible for resentencing.  When he concluded, Sanchez stated, "I'll submit on the record."  The court thanked Sanchez and told him, "I will give you a further opportunity, if you wish, recognizing that the court has discretion to order and reorder the nature of argument."  The prosecutor responded to Sanchez's argument, in part, by citing this court's decision in *People v. Hernandez, supra*, 60 Cal.App.5th at page 111, which held the People at an evidentiary hearing under section 1172.6, subdivision (d)(3), can rely on any currently valid theory of murder liability to prove the petitioner is not entitled to relief.  The court gave Sanchez an opportunity to respond.  Although Sanchez again stated "I submit" when he finished, the court asked Sanchez how he distinguished his argument from the decision in *Hernandez*.  Following further argument, Sanchez for the third time said "I submit."

At this point, the superior court denied Sanchez's petition and explained its ruling in detail.  The court then asked Sanchez, "Do you have anything else you wish to address right now, Mr. Sanchez?"  Sanchez responded that he wanted to put on the record his objections to the court's findings and began to again argue, while speaking over the court, that it was improper for the prosecutor to advance a theory of liability that had not been asserted at trial.  The court directed the court reporter not to report and notified Sanchez it had done so, explaining Sanchez

was "persist[ing] in going over old territory."  The court added that Sanchez had made focused arguments that the court had considered and assured Sanchez the record was more than sufficient to reflect his theories and objections.

Following this explanation Sanchez stated, "I get the denial, that's fine.  I'll file a notice of appeal," and inquired about his ability to make a record in a *Franklin* proceeding.  After colloquy with the prosecutor, Sanchez and Sanchez's former counsel, the court reappointed counsel and set a status hearing on that matter.

To reiterate, Sanchez, acting as his own counsel, was not physically present in the courtroom, participating in the March 3, 2022 hearing via Webex.  Under these circumstances the court's instruction to the court reporter to stop recording Sanchez's repetitive objections to the court's ruling—a direction that was made only after Sanchez kept talking when the court attempted to stop him and was followed by a full discussion with Sanchez about unrelated matters (the *Franklin* proceeding)—was well within the court's authority to control the proceedings.

Sanchez disputes that conclusion, arguing the court's actions violated his constitutional rights to be present at the evidentiary hearing (see *People v. Basler* (2022) 80 Cal.App.5th 46, 56-59 [petitioner who establishes a prima facie case for resentencing relief has state and federal constitutional rights to be personally present at the section 1172.6, subdivision (d)(3), evidentiary hearing absent a knowing, intelligent and voluntary waiver of those rights]; see also *People v. Guerrero* (2022) 76 Cal.App.5th 329, 336) and precluded him from presenting a full defense.  Neither contention has merit.

19

Sanchez was present and active throughout the hearing. The court simply precluded him from continuing to argue the merits of the case after the ruling had been announced—an entirely permissible restriction and one universally imposed by trial courts. And Sanchez fails to explain how the court's decision not to allow him to continue to argue after he had submitted the matter and the court had denied the petition prevented him from presenting a full defense. To the contrary, it plainly appears Sanchez was simply attempting once again to object to consideration of a theory of implied malice murder—a defense fully presented before the court ruled. In any event, as discussed, the unchallenged finding of express malice necessarily made any possible error with regard to the implied malice murder theory harmless.

## DISPOSITION

The postjudgment order denying Sanchez's petition for resentencing is affirmed.


PERLUSS, P. J.

We concur:


SEGAL, J.


FEUER, J.